CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

7/10/2026

LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROMEO DEMETRI TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00558 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J. WILSON, *et al.*, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Romeo Demetri Taylor, a Virginia pretrial detainee proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants J. Wilson, Lt. M. Sobo, Chad Kilgore, Dewayne Lockhart, Nurse Deborah Shields, Lt. Richard Alsbrook, Lt. Steele, Cpl. Harris, A. Deskins, SWVRJA-Abingdon, and SWVRJA Nursing Staff-Abingdon. (*See* Compl. [ECF No. 1].) This matter is before the court on three motions to dismiss by Defendants.[1] (ECF Nos. 26, 30, 32.) For the following reasons, the court will grant the first and second motions to dismiss and will grant the third motion to dismiss in part and deny it in part. The court will also dismiss Taylor's claims against SWVRJA-Abingdon and SWVRJA Nursing Staff-Abingdon under 28 U.S.C. § 1915A(b)(1).[2]

---

[1] The first motion to dismiss was filed by Deskins and Lockhart. (ECF No. 26). The second motion to dismiss was filed by Shields. (ECF No. 30). The third motion to dismiss was filed by the Southwest Virginia Regional Jail Authority ("SWVRJA"), Alsbrook, Harris, Kilgore, Sobo, Steele, and Wilson. (ECF No. 32.). To avoid confusion, the court will refer to the pending motions to dismiss as the "first," "second," and "third" motions, respectively.

[2] As noted, the SWVRJA has joined in the third motion to dismiss. (*See* ECF No. 32.) Taylor did not expressly name the SWVRJA as a Defendant. (*See* Compl.). Instead, Taylor sued SWVRJA's Abingdon facility and the Nursing Staff at that facility (*see id.*), and it does not appear that these entities or groups of Defendants have been served. Regardless, the court will address SWVRJA's arguments for the dismissal of any claims against it and will assess Taylor's claims against SWVRJA-Abingdon and SWVJRA Nursing Staff-Abingdon under the authority granted to the court by 28 U.S.C. § 1915A(b)(1).

## I.    BACKGROUND

This matter stems from events that allegedly occurred while Taylor was held at the Southwest Virginia Regional Jail's Abingdon facility (the "jail"). (*See* Compl. at 4.) Wilson, Sobo, Kilgore, Lockhart, Alsbrook, Steele, Harris, and Deskins are each correctional officers at the jail, and Shields is a nurse there. (*See id.* at 1–3.) Taylor makes the following factual allegations in his complaint, which the court accepts as true when analyzing the motions to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).

In December 2024, Taylor claims he was "removed as a diabetic" after a "dispute with the nurses" at the jail. (Compl. at 5.) Since that dispute, Taylor has allegedly had to treat his diabetes symptoms himself, such as by "cut[ting] [off] diabetic ulcers . . . to keep healthy feet." (*Id.*) Taylor alleges that he has been waiting for medical officials at the jail to order certain unspecified medication for him. (*Id.*) Taylor also claims that "they" "purposefully bother [him] [] [by] trying to get [him] cranked up" despite him having only "ask[ed] for help." (*Id.*) Additionally, Taylor disagrees with certain medical treatment "they" provided to him to treat his diabetes. (*See id.*)

According to Taylor, on March 10, 2025, from 4:45 p.m. to 5:20 p.m., he was beaten for "'refusing' to put on handcuffs." (*Id.*) Taylor allegedly "begged, screamed, and cried" for "them" "to stop." (*Id.*) Taylor also claims that Wilson "kept h[olding] [Taylor] away from the cuffs so [he could] be beaten longer." (*Id.* at 6.). "They" subsequently dragged Taylor "to the hole in the chicken wing method," which prevented Taylor from walking by himself. (*Id.*) Around this time, Wilson allegedly "knee[d]" Taylor in the face, tried to put "his knee in [Taylor's] neck," and kneed Taylor in the face "every[] time [Taylor] closed [his] neck." (*Id.*) Then, after Wilson allegedly "realized [Taylor] wasn't going to let [Wilson] kill [Taylor],"

Wilson supposedly pulled Taylor's legs above his head and behind his back. (*Id.*) According to Taylor, Wilson's actions caused him to experience pain that was "worse that having surgery." (*Id.*) Wilson also allegedly called Taylor various slurs. (*Id.*)

While Taylor was "in the hole," Wilson allegedly came to Taylor's cell door "to just slam" and/or kick the door while Taylor was sleeping. (*Id.*) Wilson also allegedly told others that he "beat [Taylor's] as[s]" and that Taylor had "cried like a little bitch." (*Id.*) Taylor claims that "the Lts and Sgts" told Taylor to "grow up and take responsibility for [his] actions." (*Id.*)

Taylor claims that in March 2025, he "got sick" after Wilson fed him. (*Id.*) One unnamed nurse assessed Taylor and told him that he had the stomach flu, while another unnamed nurse later stated that Taylor had an unspecified "virus." (*Id.*) According to Taylor, whenever any nurses "came to him they were accompanied by the one officer [Taylor] [does not] trust[:] Wilson." (*Id.*) Taylor claims that he later learned that Wilson had "poisoned" Taylor's oatmeal "with eye drops."[3]  (*Id.*) Taylor claims that he learned about Wilson's actions from Dustin Owens, "the former King Mount Prison Captain." (*Id.*) Owens allegedly "explained" to Taylor that Wilson "ha[d] been trying to harm [Taylor]" and that Taylor could identify the presence of eye drops in his food by taste. (*Id.*) Owens also allegedly told Taylor that "they" were blocking messages, calls, and video visits from Taylor's mother "until [Taylor] healed" from his injuries. (*Id.*)

Taylor claims that he asked to be transferred to a different facility. (*Id.*) In response, "they" brough a new "hole charge" against Taylor and claimed that if Taylor "accept[ed]" the charge then he would be transferred, which Taylor claims was a lie. (*Id.*) According to Taylor,

---

[3] Taylor claims that after eating the poisoned oatmeal (i) he could not sleep, eat, or move his body; (ii) he became nauseated and dizzy; and (iii) he defecated, urinated, and vomited every time he attempted to move. (Compl. at 6.)

he "wanted to know why they were racist, harmed [him] physically and mentally, discriminated against [him][—][a] black, gay, autistic, bipolar, schizophrenic [with] ADHD[—]neglected [him] physically, mentally, and medically, [and] refus[ed] [his] meals purposefully (Ofc Thomas,[4] Cpl Harris, and Cpl Destine)." (*Id.*)

Taylor claims that, as of the filing of his complaint, he is "trapped in a cell with black mold that they won't let [him] clean." (*Id.*) According to Taylor, the conditions of his cell have made him and his cellmate "sick multiple times," and Taylor claims that "feces float[s] up out [of the] toilet from other cells." (*Id.*) Taylor also claims that "maintenance" will not fix the issues with his cell and that, despite Taylor having filed grievances, certain "supervisors won't do anything" (*Id.*)

On July 21, 2025, Taylor executed his complaint. (*Id.* at 7.) He seeks monetary damages, injunctive relief, and "the release of Ofc. Wilson." (*Id.*)

On November 18, 2025, December 10, 2025, and December 15, 2025, Defendants filed the first, second, and third motions to dismiss, respectively. (ECF Nos. 26, 30, 32.) Taylor filed a response to the first motion to dismiss (ECF No. 28),[5] but did not respond to the other two motions. Deskins and Lockhart filed a reply to Taylor's sole response (ECF No. 29), and the motions to dismiss are ripe for disposition.

---

[4] Taylor did not name Thomas as a Defendant. (*See* Compl.)

[5] In his only response to the motions, Taylor requests that the court "not consider any more motions until [he] can reach an attorney and get [certain] camera footage from the jail." (ECF No. 28.) But this request is improper. *See King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (noting that "[a] Rule 12(b)(6) motion *tests the sufficiency of the complaint*") (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (noting that, in general, a plaintiff may not "unlock the doors of discovery" with a complaint that does not state a plausible claim for relief).

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). At bottom, the court "must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## III.    ANALYSIS

Taylor's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws

- 5 -

of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S 42, 48 (1988)).

The court liberally construes Taylor's complaint as asserting § 1983 claims for deliberate indifference to his serious medical needs, excessive force, and deliberate indifference to his conditions of confinement, all in violation of the Fourteenth Amendment.[6] The court addresses the motions to dismiss in turn before assessing Taylor's claims against SWVRJA-Abingdon and SWVRJA Nursing Staff-Abingdon under 28 U.S.C. § 1915A's screening authority.

## A. The First Motion to Dismiss

Through the first motion to dismiss, Lockhart and Deskins move for the dismissal of Taylor's claims against them. (ECF No. 26.) In support, these Defendants note that Taylor makes no allegations about Lockhart's conduct in his complaint, and that the only allegation that mentions Deskins is the following:

> I wanted to know why they were racist, harmed me physically and mentally, discriminated against me][—][a] black, gay, autistic, bipolar, schizophrenic [with] ADHD[—]neglected me physically, mentally, and medically, [and] refus[ed] my meals purposefully (Ofc Thomas, Cpl Harris, and Cpl Destine).[7]

(*Id.* at 1) (quoting Compl. at 6.)

In his response, Taylor states that he "[a]gree[s] to the motion . . . to dismiss Dewayne Lockhart and Ashlynn Deskins," as "Deskins is no longer employed [at the jail]" and

---

[6] Because Taylor was a pretrial detainee when the events at issue allegedly occurred (*see* ECF No. 31 at 4), his claims arise under the Fourteenth Amendment, not the Eighth. *See Tarashuk v. Givens*, 53 F.4th 154, 163 (4th Cir. 2022).

[7] Deskins asserts that she was improperly named as "Destine" in the complaint. (*See* ECF No. 26 at 1.)

"Lockhart['s] [] face isn't shown as much" there. (ECF No. 28). As Taylor has consented to the dismissal of these Defendants, the court will grant the first motion to dismiss without further analysis.

## B. The Second Motion to Dismiss

Through the second motion to dismiss, Shields moves for the dismissal of the claim(s) against her. (ECF No. 30.) Although Taylor is less than clear on this issue, he appears to assert a deliberate indifference to serious medical needs claim against Shields. (*See* Compl.)

As noted, because Taylor was a pretrial detainee when the events at issue allegedly occurred, his deliberate indifference claim against Shields arises under the Fourteenth Amendment. *See Lynch v. Hill*, No. 7:25-cv-00753, 2026 WL 1046595, at *4 (W.D. Va. Apr. 17, 2026). To state a deliberate-indifference claim under the Fourteenth Amendment, a detainee must allege:

> (1) [he] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* (quoting *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023)).

Taylor does not describe any conduct attributable to Shields in the body of his complaint. (*See* Compl.) Indeed, apart from listing Shields as a Defendant, Taylor does not mention her in the complaint at all. (*See id.*) And although he describes certain conduct attributable to unnamed nurses, this does not suffice to state a claim against Shields. To state a claim under § 1983, a plaintiff must allege a personal connection between each defendant's actions and the denial of his constitutional rights. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th

Cir. 2001); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (cleaned up)). Stated differently, a plaintiff may not "rely on bare allegations relating to the conduct of all defendants to hold a defendant liable, but must identify specific acts or conduct taken by each defendant to state a claim." *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 505 F. Supp. 3d 570, 582 (M.D.N.C. 2020) (cleaned up). Without specific allegations regarding her conduct, the court cannot say that Shields was deliberately indifferent to Taylor's serious medical needs. Accordingly, the court will grant the second motion to dismiss.

## C. The Third Motion to Dismiss

Through the third motion to dismiss, the SWVRJA, Kilgore, Sobo, Alsbrook, Harris, Steele, and Wilson move for the dismissal of Taylor's claims against them. (ECF No. 32.). These Defendants argue generally that Taylor's complaint does not contain sufficient factual allegations to state any plausible claims. (*See id.*) Although the court agrees that Taylor has failed to state a claim against the SWVJRA, Kilgore, Sobo, Alsbrook, Harris, and Steele, the court does not agree that Taylor failed to state a claim against Wilson. The court addresses each of these Defendants in turn.

### 1. The SWVRJA

To impose liability on the SWVRJA, Taylor must rely on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), which permits suits against regional jail authorities only if it is the implementation of their policies—official or unofficial—that results in the alleged constitutional deprivation. *See Hixson v. Hutcheson*, No. 5:17-cv-00032, 2018 WL 3715763, at *7 (W.D. Va. Aug. 3, 2018). An entity faces liability under *Monell* only when its "policy or

- 8 -

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. An entity's policy includes "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Additionally, the duration and frequency of the officers' unconstitutional conduct must indicate that supervisory officials of the entity being sued "(1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Id.* at 403 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)).

Taylor does not identify any policy of the SWVRJA that allegedly caused any constitutional injuries. Nor has he plead facts to show that the SWVRJA's supervisory officials had actual or constructive knowledge of any unconstitutional conduct and/or failed to correct such conduct due to their deliberate indifference. As he has failed to adequately plead *Monell* liability on the part of the SWVRJA, and the third motion to dismiss will be granted as to it.

2.  Kilgore, Sobo, Alsbrook, Harris, and Steele

Apart from listing them as Defendants, Taylor does not allege any conduct on the part of Kilgore, Sobo, Alsbrook, and Steele. (*See* Compl.) And as noted, Taylor only alleges the following as to Harris:

> I wanted to know why they were racist, harmed me physically and mentally, discriminated against me][—][a] black, gay, autistic, bipolar, schizophrenic [with] ADHD[—]neglected me physically, mentally, and medically, [and] refus[ed] my meals purposefully (Ofc Thomas, Cpl Harris, and Cpl Destine).

(Compl. at 6.)

As discussed, liability under § 1983 "will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Vinnedge*, 550 F.2d at 928. And a plaintiff may not "rely on bare allegations relating to the conduct of all defendants to hold a defendant liable but must identify specific acts or conduct taken by each defendant to state a claim." *Intercollegiate Women's Lacrosse Coaches Ass'n*, 505 F. Supp. 3d at 58 (cleaned up). Here, there is simply not enough factual matter in the complaint to suggest more than the possibility of misconduct by Kilgore, Sobo, Alsbrook, Harris, and Steele. Accordingly, the third motion to dismiss will be granted as to these Defendants.

3.  Wilson

Taylor asserts what appears to be three separate excessive force claims against Wilson. (*See* Compl. at 5–6.) First, Taylor alleges that Wilson used excessive force against Taylor while transporting him to "the hole" on March 10, 2025. *(See id.)*. Second, Taylor alleges that Wilson used excessive force against Taylor by slamming and/or kicking the door to the hole while he was sleeping. (*See id.* at 6.) Third, Taylor alleges that Wilson used excessive force against Taylor by "poison[ing]" his oatmeal.[8] (*See id.*)

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrikson*, 576 U.S. 389, 397 (2015). To state a Fourteenth Amendment excessive-force claim, a pretrial detainee must allege facts showing that "the force purposely or knowingly used against him was objectively unreasonable." *Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024). This

---

[8] Liberally construed, Taylor's complaint could be read as stating a separate claim against Wilson based on alleged verbal abuse. (*See* Compl. at 6.) But if Taylor intended to raise such a claim, it fails. *See Wilson v. McKeller*, 254 F. App'x 960, 961 (4th Cir. 2007) (per curiam) ("[V]erbal abuse, without more, do[es] not state a cognizable claim under § 1983" (citing *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992))).

showing requires satisfying two elements. First, the plaintiff must allege facts that, if true, would show that the defendant acted deliberately "with respect to his physical acts." *Kingsley*, 576 U.S. at 396. This means that the defendant's state of mind "with respect to the bringing about of certain physical consequences in the world" must have been either purposeful, knowing, or possibly reckless. *Id.* ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.") (emphasis in original).

Second, the allegations must show that use of force was "objectively unreasonable." *Id.* at 397. To determine whether the force used was reasonable, the court considers the following, non-exhaustive list of factors: (i) "the relationship between the need for the use of force and the amount of force used"; (ii) "the extent of the plaintiff's injury"; (iii) "any effort made by the officer to temper or to limit the amount of force"; (iv) "the severity of the security problem at issue"; (v) "the threat reasonably perceived by the officer"; and (vi) "whether the plaintiff was actively resisting." *Id.* The test for reasonableness is not to be applied "mechanically," but rather "requires careful attention to the facts and circumstances of each particular case." *Lombardo v. City of St. Louis, Mo.*, 594 U.S. 464, 467 (2021). Consequently, an officer's use of force "cannot be judged in a vacuum," but rather "turns on the 'facts and circumstances of each particular case.'" *Aliff v. W.Va. Reg'l Jail & Corr. Facility Auth.*, No. 2:15-cv-13513, 2016 WL 5419444, at *7 (S.D. W. Va. Sept. 26, 2016) (citing *Kingsley*, 576 U.S. at 397). Because the reasonableness element of a Fourteenth Amendment excessive-force claim is "highly fact-dependent," the reviewing court "must take into account the perspective of a reasonable officer on the scene, including what the officer knew at the time[.]" *Bratcher v. Hampton Roads Reg'l Jail*, No. 1:16-cv-00224, 2018 WL 1037052, at *4 (E.D. Va. Feb. 21, 2018), *aff'd*, 738 F. App'x 793 (4th Cir. 2018) (per curiam) (citation omitted). Thus, "a court must have *some*

- 11 -

knowledge of the circumstances surrounding a given use of force—beyond the unadorned accusation that it was excessive and generally in violation of all laws and regulations governing a prison official's use of force—in order to draw the inference that such use of force was constitutionally unreasonable." *Aliff*, 2016 WL 5419444, at *7 (emphasis in original); *see also Vizbaras v. Prieber*, 761 F.2d 1013, 1016 (4th Cir. 1985) ("The use of force . . . is not *per se* unconstitutional.").

Taking Taylor's version of the facts as true and making all reasonable inferences in his favor, the court finds that he has stated plausible excessive force claims against Wilson. First, Taylor's allegations allow the court to infer that Wilson acted intentionally regarding his physical acts toward Taylor. Regarding his first claim against Wilson, Taylor alleges that the officer "h[eld] [Taylor] away from the cuffs," "knee[ed] [Taylor] in [his] face," and "pull[ed] [Taylor's] legs . . . above [his] head [and] behind [his] back." (Compl. at 6.) As to his second and third claims, Taylor respectively alleges that Wilson "slam[med]" and/or "kick[ed]" the door to the hole and "poisoned [Taylor's oatmeal] with eye drops."[9] (*Id.*) From these allegations, the court can reasonably infer that Wilson's actions were purposeful with respect to their physical consequences in the world. *See Kinglsey*, 576 U.S. at 396; *cf. Dunham v. Cnty. of Monterey*, No. 18-cv-04467, 2020 WL 9395224, at *7 (N.D. Cal. Apr. 29, 2020) (finding force consisting of "punching" and "striking" was "clearly deliberate").

Taylor has also raised sufficient allegations to show that Wilson's use of force was objectively unreasonable. In alleging his first claim against Wilson, Taylor uses quotation

---

[9] Allegations of intentional poisoning are assessed under the rubric of excessive force. *See, e.g.*, *Adams v. Tenn. Dep't of Corr.*, No. 3:12-cv-00787, 2012 WL 3402174, at *4 (M.D. Tenn. Aug. 14, 2012). And although Wilson likely disputes Taylor's allegations, the court at this stage must accept them as true. *Birmingham*, 846 F.3d at 92.

marks around "refusing," which suggests that the officer's use of force was not actually based on Taylor's refusal to be placed in handcuffs. (*See* Compl. at 5.) And Taylor alleges that Wilson's use of force caused him to experience pain that was "worse that having surgery." (*Id.* at 6.) As to his second claim against Wilson, Taylor alleges that the officer slammed and/or kicked the door to the hole while Taylor was sleeping and therefore presumably not causing any disturbance.[10] (*See id.*) Regarding his third claim against Wilson, Taylor alleges that the officer "poisoned" his oatmeal which made him ill.  (*See id.*) Although additional facts could affect the court's evaluation of the reasonableness of Wilson's actions, as alleged, they constitute excessive and constitutionally unreasonable force. Therefore, Taylor's excessive-force claims against Wilson will not be dismissed.

### D. SWVRJA-Abingdon and SWVRJA Nursing Staff-Abingdon

As discussed, neither SWVRJA-Abingdon nor SWVRJA Nursing Staff-Abingdon appear to have been served. Accordingly, the court analyzes whether Taylor has stated claims against these Defendants under 28 U.S.C. § 1915A's screening authority.

Before or soon after docketing, the court must review the complaint in any "civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Following its review, the court must dismiss the complaint, or any portion thereof, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.* § 1915A(b). In assessing whether a prison complaint fails to state a claim for purposes of § 1915A, the court applies the same standard as under Federal

---

[10] Although Taylor does not allege any physical contact caused by Wilson's alleged slamming and kicking of the door, this is not necessarily dispositive as to any excessive-force claim. *See Schultz v. Braga*, 455 F.3d 470, 483 (4th Cir. 2006) ("Nor have we held today that a suspect must be physically struck by a bullet (or any other object) to state a claim for excessive force.")

Rule of Civil Procedure 12(b)(6). *See Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 267(4th Cir. 2024) (citations omitted), *rev'd on other grounds*, 606 U.S. 942 (2025). The court therefore accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Taylor's favor and asks whether those allegations state a plausible claim for relief. *See id.*; *Hodges v. Meletis*, 109 F.4th 252, 259 (4th Cir. 2024) (citations omitted).

Taylor's claims against SWVRJA-Abingdon and SWVRJA Nursing Staff-Abingdon must fail. SWVRJA-Abingdon, as a local jail facility, is not a "person" subject to suit under § 1983. *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 894 (E.D. Va. 1992) ("[T]he jail is not a person under § 1983" and thus "lacks he capacity to be sued as a jail."). Likewise, SWVRJA Nursing Staff-Abingdon is not a legal entity subject to suit under § 1983. *See Wilson v. S. Health Partners Nursing Staff*, No. 1:18-cv-00013, 2018 WL 1972716, at *2 (W.D.N.C. Apr. 26, 2018) (holding that "[n]either 'Southern Health Partners' nursing staff' nor 'Cleveland County Detention officers' is a distinct legal entity capable of being sued; nor is either a 'person' within the meaning of § 1983."); *see also Chinnici v. Centurion of Vt., LLC*, No. 2:16-cv-00264, 2018 WL 6002116, at *4 (D. Vt. Oct. 10, 2018) (collecting cases for the same proposition). For these reasons, Taylor's claims against SWVRJA-Abingdon and SWVRJA Nursing Staff-Abingdon will be dismissed.

## IV.   CONCLUSION

For the reasons stated above, the court will grant the first and second motions to dismiss and will grant in part and deny in part the third motion to dismiss. The court will also dismiss Taylor's claims against SWVRJA-Abingdon and SWVRJA Nursing Staff-Abingdon under 28 U.S.C. § 1915A's screening authority.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

     **ENTERED** this 10th day of July, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE
