CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 30, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROMEO DEMETRI TAYLOR, | ) |
| | ) |
| Plaintiff, | ) Case No. 7:25-cv-00558 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| J. WILSON, *et al.*, | ) By: Hon. Thomas T. Cullen |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiff Romeo Demetri Taylor, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants J. Wilson, Lt. M. Sobo, Chad Kilgore, Dewayne Lockhart, Nurse Deborah Shields, Lt. Alsbrook, Lt Steele, Cpl Harris, A. Deskins, SWVRJA-Abingdon, and SWVRJA Nursing Staff-Abingdon.[1] (*See* Compl. [ECF No. 1].) This matter is before the court on Wilson's motion for summary judgment (ECF No. 42), Taylor's motion for a jury trial and discovery (ECF No. 47), Taylor's motion for summary judgment (ECF No. 48), and Taylor's motion for discovery and a hearing (ECF No. 49). For the following reasons, the court will grant Wilson's motion for summary judgment and deny as moot the remaining motions.

## I. BACKGROUND

This matter stems from events that allegedly occurred while Taylor was incarcerated at the Southwest Virginia Regional Jail Authority ("SWVRJA")'s Abingdon facility (the "jail").

[1] Only Taylor's claims against Wilson remain. (*See* ECF Nos. 38, 39.)

(*See* Compl. at 1.) Wilson is a correctional officer at the jail. (*See id.*) Regarding Wilson, Taylor makes the following allegations in his complaint.[2]

According to Taylor, on March 10, 2025, from 4:45 p.m. to 5:20 p.m., he was beaten for "'refusing' to put on handcuffs." (*Id.*) Taylor allegedly "begged, screamed, and cried" for "them" "to stop." (*Id.*) Taylor also claims that Wilson "kept h[olding] [Taylor] away from the cuffs so [he could] be beaten longer." (*Id.* at 6.) "They" subsequently dragged Taylor "to the hole in the chicken[-]wing method," which prevented Taylor from walking by himself. (*Id.*) Around this time, Wilson allegedly "knee[d]" Taylor in the face, tried to put "his knee in [Taylor's] neck," and kneed Taylor in the face "every[] time [Taylor] closed [his] neck." (*Id.*) Then, after Wilson allegedly "realized [Taylor] wasn't going to let [Wilson] kill [Taylor]," Wilson supposedly pulled Taylor's legs above his head and behind his back. (*Id.*) According to Taylor, Wilson's actions caused him to experience pain that was "worse than having surgery." (*Id.*) Wilson also allegedly called Taylor various slurs. (*Id.*)

While Taylor was "in the hole," Wilson allegedly came to Taylor's cell door "to just slam" and/or kick the door while Taylor was sleeping. (*Id.*) Wilson also allegedly told others that he "beat [Taylor's] as[s]" and that Taylor had "cried like a little bitch." (*Id.*) Taylor claims that "the Lts and Sgts" told Taylor to "grow up and take responsibility for [his] actions." (*Id.*)

Taylor claims that in March 2025, he "got sick" after being fed by Wilson. (*Id.*) One unnamed nurse assessed Taylor and told him that he had the stomach flu, while another

[2] Taylor's factual allegations come from his complaint, which is not verified (*see* Compl.), and therefore cannot "be considered for purposes of summary judgment." *Monchéry v. Dryden*, No. 7:23-cv-00461, 2025 WL 2842399, at *8 (W.D. Va. Oct. 7, 2025) (citing *Goodman v. Diggs*, 986 F.3d 493, 499 (4th Cir. 2021)); *see also Goodman*, 986 F.3d at 495 n. 2 ("A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020))). But because Taylor's factual allegations provide context for his claims, the court will nevertheless summarize his allegations as they relate to his claims against Wilson.

unnamed nurse later stated that Taylor had an unspecified "virus." (*Id.*) According to Taylor, whenever any nurses "came to him they were accompanied by the one officer [Taylor] [does not] trust[:] Wilson." (*Id.*) Taylor claims that he later learned that Wilson had "poisoned" Taylor's oatmeal "with eye drops."[3] (*Id.*) Taylor claims that he learned about Wilson's actions from a Dustin Owens, who Taylor describes as "the former King Mount Prison Captain." (*Id.*) Owens allegedly "explained" to Taylor that Wilson "ha[d] been trying to harm [Taylor]" and that Taylor could identify the presence of eye drops in his food by taste. (*Id.*) Owens also allegedly told Taylor that "they" were blocking messages, calls, and video visits from Taylor's mother "until [Taylor] healed" from his injuries. (*Id.*)

On July 21, 2025, Taylor executed his complaint. (*See id.* at 7.) Taylor asserts, among others, what the court previously construed as three separate excessive-force claims against Wilson. (*See* ECF No. 38 at 10.) First, Taylor alleges that Wilson used excessive force against him while transporting him to "the hole" on March 10, 2025. (*See* Compl. at 5–6). Second, Taylor alleges that Wilson used excessive force against him by slamming and/or kicking the door to "the hole" while he was sleeping. (*See id.* at 6.) Third, Taylor alleges that Wilson used excessive force against Taylor by "poison[ing]" his oatmeal.[4] (*See id.*)

In November and December 2025, Defendants moved to dismiss Taylor's complaint. (*See* ECF Nos. 26, 30, 32.) On July 10, 2026, the court granted the motions to dismiss as to all of Taylor's claims except for his excessive-force claims against Wilson. (*See* ECF Nos. 38, 39.)

---

[3] Taylor claims that after eating the poisoned oatmeal, he: (i) could not sleep, eat, or move his body; (ii) became nauseated and dizzy; and (iii) defecated, urinated, and vomited every time he attempted to move his body. (Compl. at 6.)

[4] As the court previously noted, allegations of intentional poisoning by jail officials are assessed under the rubric of excessive force. (*See* ECF No. 38 at 12 n. 9 (citing *Adams v. Tenn. Dep't of Corr.*, No. 3:12-cv-00787, 2012 WL 3402174, at *4 (M.D. Tenn. Aug. 14, 2012)).

On August 10, 2026, Wilson filed his motion for summary judgment. (ECF No. 42.) Wilson argues that he is entitled to summary judgment on Taylor's remaining claims because Taylor failed to exhaust administrative remedies before bringing this action, as required by the Prison Litigation Reform Act (the "PLRA"). (*Id.* at 3–5.) Taylor filed a response in opposition (ECF No. 50), Wilson did not file a reply, and the motion for summary judgment is ripe for disposition.

On September 1, 2026, Taylor's motion for a jury trial and discovery and his motion for summary judgment were docketed.[5] (*See* ECF Nos. 47, 48.) On September 14, 2026, Taylor's motion for discovery and a hearing was docketed.[6] (*See* ECF No. 49.) Wilson did not respond to these motions.

## II. STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

[5] The latter motion was docketed as a motion for summary judgment due to Taylor's request therein for "summary of [*sic*] judgment" (*See* ECF 48 at 1.)

[6] This motion is identical to Taylor's response to Wilson's motion for summary judgment. (*See* ECF Nos. 49, 50.)

irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

## III. ANALYSIS

Before addressing Wilson's motion for summary judgment, the court must address a preliminary issue. As noted, Taylor has filed a motion for a jury trial and discovery (ECF No. 47) and a motion for discovery and a hearing (ECF No. 49), both of which remain pending. In the first motion, Taylor requests, among other things, the production of certain "video footage, records, and supporting documents from SWVRJ Abingdon." (ECF No. 47 at 1.) In the second motion, Taylor requests, among other things, the production of certain "medical records, witness statements, disciplinary records, [and] camera footage," as well as for the court to "deny dismissal until the correct records are release[d]." (ECF No. 48.) Although Taylor never identifies them as such, the court construes the above requests as for continuances to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d).

"As a general rule, summary judgment is appropriate only after 'adequate time for discovery.'" *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Rule 56(d) provides that:

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). But "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed . . . to set out reasons for the need for discovery in an affidavit." *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006) (quoting *Evans*, 80 F.3d at 961) (bracketing in original). And a nonmoving party's request for further discovery is properly denied "where the additional evidence sought for

discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Here, Taylor's construed requests to continue under Rule 56(d) are properly denied. As an initial matter, Taylor does not explain why he needs his requested discovery to overcome summary judgment. He has therefore failed to comply with Rule 56(d). Moreover, the court does not see why his requested discovery—which consists of medical, disciplinary, and other unspecified "records[;]" witness statements; video footage; and "supporting documents"—would be necessary to overcome Wilson's motion for summary judgment. As noted, Wilson moves for summary judgment based on Taylor's alleged failure to exhaust his administrative remedies. But the discovery that Taylor requests appears to relate to the merits of his claims. *See Miller v. McConneha*, No. JKB-15-1349, 2015 WL 6727547, at *2 (D. Md. Nov. 2, 2015) ("Miller is not entitled to discovery in this case, because his failure to exhaust administrative remedies bars his claim to damages in this forum and precludes examination as to the merits of his Eighth Amendment claim."). Thus, to the extent Taylor requests a continuance under Rule 56(d), such request is denied.

Having addressed the above issue, the court will turn to Wilson's motion for summary judgment. As noted, Wilson argues that summary judgment is proper because Taylor failed to exhaust his available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). (*See* ECF No. 29 at 2.) For the following reasons, the court agrees with Wilson and will accordingly grant the motion for summary judgment. Because the court will enter judgment on Taylor's remaining claims, it will deny as moot the other pending motions.

**A. Exhaustion of Administrative Remedies**

The PLRA requires inmates to exhaust all available remedies before filing lawsuits challenging prison conditions. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). This requirement "gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To adequately exhaust administrative remedies, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); *see also Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (per curiam) ("The PLRA 'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so *properly*,' to allow the agency a full and fair opportunity to address the issues on the merits.") (quoting *Woodford*, 548 U.S. at 90, 93) (emphasis in original). "'Proper exhaustion,' therefore, 'demands compliance with an agency's deadlines and other critical procedural rules.'" *Woodhouse*, 741 F. App'x at 178 (quoting *Woodford*, 548 U.S. at 90). "And given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies, even to take into account 'special circumstances' that might otherwise justify noncompliance with procedural requirements." *Moss*, 19 F.4th at 621 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)); *see also Woodhouse*, 741 F. App'x at 177–78 ("[C]ourts have no discretion to waive the exhaustion requirement.") (citing *Woodford*, 548 U.S. at 85). Still, "because 'failure to exhaust is an affirmative defense under the PLRA,' defendants bear the burden of establishing that a prisoner has failed to exhaust his administrative remedies." *Woodhouse*, 741 F. App'x at 178 (quoting *Jones*, 549 U.S. at 216).

"[T]he only exception to the PLRA's exhaustion requirement is when an administrative remedy is not 'available.'" *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (citing *Ross*, 578 U.S. at 642). An administrative remedy is unavailable, and thus the PLRA does not require exhaustion, if the would-be remedy is "officially on the books" but is not "capable of use to obtain relief." *Moss*, 19 F.4th at 621 (quoting *Ross*, 578 U.S. at 643). A prisoner may demonstrate that an administrative remedy is "unavailable" by showing that (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (e.g., "if administrative officials have apparent authority, but decline ever to exercise it"), (2) it is "so opaque that it becomes, practically speaking, incapable of use" (e.g., where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"), or (3) "the prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (e.g., where "officials misl[ead] or threate[n] individual inmates so as to prevent their use of otherwise proper procedures"). *Ross*, 578 U.S. at 643–44. The Fourth Circuit has stated that "[j]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Woodhouse*, 741 F. App'x at 178 (citations omitted).

**B. SWVRJA's Inmate Handbook**

In support of his motion for summary judgment, Wilson provided the affidavit of Melissa White, who is the executive assistant for the SWVRJA. (ECF No. 42-1.) White's affidavit is accompanied by the SWVRJA's Inmate Handbook (the "IH"), Taylor's "Inmate Orientation" form, and Taylor's grievance records. (ECF Nos. 42-2, 42-3, 42-4, 42-5.) In her affidavit, White explains the administrative process for resolving disputes that was in effect for SWVRJA inmates at the time of the events described in the complaint. (ECF No. 42-1 at

1–2.) As White explains, the IH governs, among other things, the inmate grievance procedure at the SWVRJA's various facilities. (*See id.* at 1.)

White's affidavit and the enclosed copy of the IH reveal that the first step in the inmate grievance procedure is to make a good-faith effort to resolve the issue informally by filing a request form or, if the matter involves a medical issue, a medical request form. (*Id.* at 1–2; ECF No. 42-2 at 28.) If the issue is not resolved, the next step is for the inmate to file a grievance within seven days of the incident being grieved. (ECF No. 42-1 at 2; ECF No. 42-2 at 29.) All inmates have access to either paper request forms or electronic request forms through inmate electronic kiosks, or both, regardless of where they are housed in a SWVRJA facility. (ECF No. 42-1 at 2.) If the issue being grieved is an emergency, the grievance may be forwarded to the shift commander. (ECF No. 42-2 at 29.) If the shift commander finds that the issue raised is not an emergency, he or she will indicate such finding and forward the grievance to the grievance officer. (*Id.*)

Upon receiving a grievance, SWVRJA staff will review it to determine whether it meets the definition of a grievance and if proper informal resolution attempts have been made. (*Id.*) SWVJRA staff are to provide a written response to the grievance within 9 days. (*Id.*) If the issue is still not resolved, the final step is for the inmate to appeal the response to the grievance within seven days of its receipt. (*Id.*) Such appeals are to be made to the chief of security for processing. (*Id.*)

**C. Taylor's Submissions**

White's review of Taylor's SWVRJA grievance file reveals that Taylor made no informal requests regarding the alleged incidents on March 10, 2025, or regarding any alleged food poisoning. (ECF No. 48-1 at 2.) Such review also reveals that, prior to the events at issue in

this case, Taylor submitted various grievances, medical grievances, medical sick-call requests, mental-health requests, and security requests generally concerning his medical condition and other issues. (*Id.* at 2–3.) And though Taylor used administrative remedies after March 10, 2025, he did not reference Wilson's alleged excessive force or poisoning of Taylor's food. (*Id.* at 4.)

**D. Discussion**

Here, the undisputed facts in the record show that Taylor failed to exhaust his administrative remedies under the IH as to his claims against Wilson. As noted, Taylor made no informal requests regarding the alleged incidents on March 10, 2025, or Wilson's alleged poisoning of Taylor's food, as the IH requires. Moreover, Talyor has not shown that administrative remedies were unavailable to him. *See Strickland v. Wang*, No. 7:11-cv-00358, 2013 WL 866075, at *1 n.1 (W.D. Va. Mar. 7, 2013) ("The burden of showing that administrative remedies were unavailable lies with the plaintiff" (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (per curiam).[7] Indeed, the record shows that Taylor was able to use administrative remedies around the time the events at issue allegedly occurred. (*See* ECF No. 42-1 at 2–4; *see also* ECF Nos. 42-4, 42-5.) As the undisputed evidence shows that Taylor

[7] Recently, the Supreme Court held that an inmate is entitled to have a jury determine whether administrative remedies were available to him "when that dispute is intertwined with the merits of the underlying suit." *Perttu v. Richards*, 605 U.S. 460, 464, 479 (2025). But such circumstances are not present here. Taylor's claims against Wilson are based on the officer's alleged use of excessive force against Taylor. (*See* Compl. at 5–6.) Taylor asserts no claims against Wilson based on Taylor's lack of access to grievance procedures or other administrative remedies. (*See id.*); *see also Allen v. Hurley*, No. 7:21-cv-00641, 2025 WL 2713763, at *1 n.2 (determining that the plaintiff's "underlying suit—which alleges claims related to an allegedly false disciplinary charge, alleged due process violations in the subsequent disciplinary hearing, and allegations of cruel and unusual punishment[]—is not intertwined with the questions of whether [the plaintiff] exhausted his administrative remedies"). Regardless, "there is no material factual dispute regarding [Taylor's] exhaustion that would compel submission of that question to a jury." *Id.* (citing Fed. R. Civ. P. 56).

failed to exhaust his administrative remedies, the court will enter judgment in Wilson's favor as to Taylor's remaining claims.

## IV. CONCLUSION

For the reasons stated above, the court will grant Wilson's motion for summary judgment. Because the court will enter judgment in Wilson's favor as to Taylor's remaining claims, it will deny Taylor's pending motions as moot.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 30th day of September, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE